# EXHIBIT A

| HAMILTON County | **STATE OF TENNESSEE** | Case Number |
| CHANCERY COURT | **CIVIL SUMMONS** page 1 of 1 | 23 0622 |

| Greater Chattanooga Coalition for Private Property Rights **Vs.** | City of Chattanooga |

Served On:

City of Chattanooga     Office of the City Attorney, 110 E. 11th St., 2nd Floor City Hall Annex, Suite 200, Chattanooga, TN 37402.

You are hereby summoned to defend a civil action filed against you in _____CHANCERY_____ Court, _____HAMILTON_____ County, Tennessee. Your defense must be made within thirty (30) days from the date this summons is served upon you. You are directed to file your defense with the clerk of the court and send a copy to the plaintiff's attorney at the address listed below. If you fail to defend this action by the below date, judgment by default may be rendered against you for the relief sought in the complaint.

Issued: September 14, 2023     **ROBIN L. MILLER, C&M**

                                               Clerk / Deputy Clerk

Attorney for Plaintiff:    Bennett J. Wills (034831) / Brian T. Boyd (023521)
                       750 Old Hickory Blvd., 2-150 Brentwood, TN 37027 615-861-1936

### NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S): Tennessee law provides a ten thousand dollar ($10,000) personal property exemption as well as a homestead exemption from execution or seizure to satisfy a judgment. The amount of the homestead exemption depends upon your age and the other factors which are listed in TCA § 26-2-301. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for your self and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Please state file number on list.

Mail list to     _____, _____ Clerk, _____County

### CERTIFICATION (IF APPLICABLE)

I, _____, _____ Clerk of _____ County do certify this to be a true and correct copy of the original summons issued in this case.

Date: _____

                        Clerk / Deputy Clerk

**OFFICER'S RETURN:** Please execute this summons and make your return within ninety (90) days of issuance as provided by law.

I certify that I have served this summons together with the complaint as follows: _____

Date:_____        By:_____
                                     Please Print: Officer, Title

_____               _____
Agency Address                              Signature

**RETURN ON SERVICE OF SUMMONS BY MAIL:** I hereby certify and return that on _____, I sent postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in the above styled case, to the defendant _____. On _____ I received the return receipt, which had been signed by _____ on _____. The return receipt is attached to this original summons to be filed by the Court Clerk.

Date: _____                                                                                             )
                                Notary Public / Deputy Clerk (Comm. Expires _____)

_____                             _____
Signature of Plaintiff              Plaintiff's Attorney (or Person Authorized to Serve Process)
                          **(Attach return receipt on back)**

*ADA: If you need assistance or accommodations because of a disability, please call _____, ADA Coordinator, at ( ) _____*

*Rev. 03/11*

## IN THE CHANCERY COURT FOR HAMILTON COUNTY, TENNESSEE

GREATER CHATTANOOGA
COALITION FOR PRIVATE
PROPERTY RIGHTS,

       *Plaintiff,*

      v.

CITY OF CHATTANOOGA,

      *Defendant.*

Case No.: 23-0622

---

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

COMES NOW, Plaintiff, Greater Chattanooga Coalition for Private Property Rights (hereinafter "GCCPPR"), and files this Complaint for Declaratory and Injunctive Relief against the Defendant, the City of Chattanooga. Plaintiff states:

### INTRODUCTION

1. Plaintiff brings this lawsuit as a challenge to the constitutionality of Ordinance No. 13981 (hereinafter the "STR[1] Ordinance;" see also Exhibit A hereto). The ordinance was enacted by the City of Chattanooga on May 16, 2023, to go into effect two weeks later.

2. The STR Ordinance, as enacted, amends and replaces Chattanooga City Code, Part II, Chapter 11, Article XX (Short Term Rental Vacation Rental Certificate), and creates new Chapter 38, Zoning, Division 27 (Uses Requiring Short Term Vacation Rental Certificates).

3. The intent of the ordinance is to "provide appropriate opportunities for the development of short-term vacation rentals in the City of Chattanooga." (Ord. Section 38.431).

---

[1] As used herein, "STR" is an acronym for Short Term Rental.

2023 SEP 14 AM 10: 25

HAMILTON CLERK & MASTER

1

4. As alleged herein, this Ordinance and the associated code sections, violate the constitutional rights of short-term rental owners by drawing a distinction between owner-occupied[2] STRs and non-owner-occupied[3] STRs and by limiting certain STRs to commercial zones versus residential zones. (Ord., Section 38.431).

5. Further, the ordinance discriminates against non-owner-occupied applicants in that it charges a higher application fee and has more requirements related to inspections in order to qualify for a certificate. (Ord., Section 38-436(b)-(c)).

6. Further, the ordinance violates a property owners' First Amendment right to place signage on-site unless the rental is at least (5) five acres and does not have a dwelling visible from the public right-of-way. (Ord., Section 38-435(b)).

### JURISDICTION AND VENUE

7. Plaintiff brings this civil action pursuant to T.C.A. § 29-14-102, the First, Fourth, and Fourteenth Amendments to the U.S. Constitution, and Article I, Sections 7, 8, 19, 22, and Article XI, Section 8 of the Tennessee Constitution.

8. Further, Plaintiff brings this action under 42 U.S.C. § 1983 to redress the deprivation under color of law rights secured by the U.S. Constitution. This Court has concurrent jurisdiction over the federal constitutional claims as held in *Martinez v. California*, 444 U.S. 277 (1980).

9. This Court has subject-matter jurisdiction and venue is proper pursuant to T.C.A. §§ 16-11-101, *et seq.*, 29-1-101, and 29-14-102(a).

---

[2] The STR Ordinance defines an owner-occupied unit as a "Homestay," which is a short-term vacation rental property which is the primary residence of the applicant where the applicant resides at least 183 days a year.
[3] The STR Ordinance defines a non-owner-occupied unit as an "Absentee," which is a short-term vacation rental property which is not the primary residence of the applicant.

2

10. This Court has authority to enter a declaratory judgment and to provide permanent injunctive relief pursuant to T.C.A. §§ 29-1-101, 29-14-102(a), 29-14-103 and Tenn. R. Civ. P. 65, *et seq.*

## THE PARTIES

11. Plaintiff is a Tennessee nonprofit corporation authorized to conduct business in the State of Tennessee. Plaintiff has a principal place of business in Hamilton County, Tennessee.

12. Defendant, the City of Chattanooga, is a municipality located in Hamilton County, Tennessee. The City of Chattanooga can be served with process at: the Office of the City Attorney, 110 E. 11th St., 2nd Floor City Hall Annex, Suite 200, Chattanooga, TN 37402.

13. Plaintiff is an association of short-term rental property owners that have standing to bring this suit on behalf of the non-profit and for the benefit of all of those natural persons and entities that own short-term rental properties in the City of Chattanooga. *See Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

## FACTUAL BACKGROUND

14. The City of Chattanooga has regulated STVR[4] operations since 2009 when the City Council passed Ordinance 12231 limiting STVR operation to only R-3 and R-4 zones.[5]

15. In 2017, City Council passed a comprehensive STVR reform ordinance (Ordinance 13194) to restrict STVR operation to "The Overlay."[6]

16. This ordinance made all zones that allowed for dwellings within "The Overlay" to be eligible for STVR permitting provided certain regulatory steps were taken.[7]

---

[4] Short Term Vacation Rentals.
[5] https://chattanooga.gov/public-works/land-development-office/short-term-vacation
[6] *Id.*
[7] *Id.*

3

17. Additionally, the ordinance grandfathered the R-3 and R-4 protections present in the 2009 ordinance into the 2017 ordinance so those zones would not be restricted to "The Overlay."[8]

18. In 2019, City Council revised Ordinance 13194, and the revisions were adopted as Ordinance 13515. This ordinance tweaked the opposition requirements and allowed an additional appeals process for applicants denied by The Land Development Office.[9]

19. A moratorium went into effect on all new non-owner occupied short-term rental applications on January 9, 2023, to last through July 10, 2023.[10]

20. On May 16, 2023, Ordinance 13981 was passed after a second reading and went into effect two weeks later.

21. As enacted, the Ordinance is unconstitutional because it violates the civil rights of the citizens of the City of Chattanooga and cannot be enforced.

## CAUSES OF ACTION

### COUNT I: DECLARATORY JUDGMENT

22. Plaintiff incorporates all other paragraphs of this Complaint herein by reference.

23. The Ordinance violates numerous constitutional rights under both the United States Constitution and the Tennessee Constitution, as well as state and federal laws as alleged herein.

24. Plaintiff seeks a judgment declaring the Ordinance unconstitutional and unenforceable by the City of Chattanooga.

---

[8] *Id.*
[9] *Id.*
[10] *Id.*

4

## COUNT II: VIOLATION OF U.S. CONST. AMEND. I. AND ARTICLE I, SECTION 19 OF THE TENNESSEE CONSTITUTION (COMMERCIAL SPEECH)

25. Plaintiff incorporates all other paragraphs of this Complaint herein by reference.

26. The First Amendment of the United States Constitution provides the right to the freedom of speech, including commercial speech. Likewise, the Tennessee Constitution provides the same protections. (See U.S. Const. amend. I; Article I, Section 9, Tennessee Const.).

27. Such protections extend to commercial speech such as advertisements and signage.

28. The Ordinance, section 38-435(d), prohibits "on-site" signage for vacation rentals except for those that are at least five acres and have a dwelling unit that is not visible from the street.

29. The Ordinance, section 38-435(d), prohibits "off-site" signage except for any city designated required signage and signage for designated parking spaces.

30. The Ordinance, section 38-435(d), prohibits signage larger than three square feet.

31. These restrictions violate the Plaintiff's First Amendment rights to speech.

32. The restrictions are not narrowly tailored to achieve any substantial government interest.

33. As a result, Plaintiff has suffered damages and the Ordinance is unconstitutional.

## COUNT III: VIOLATION OF U.S. CONST. AMEND. I. AND ARTICLE I, SECTION 19 OF THE TENNESSEE CONSTITUTION (FREEDOM OF ASSOCIATION)

34. Plaintiff incorporates all other paragraphs of this Complaint herein by reference.

35. The United States Constitution and Tennessee Constitution protect the rights of people to assemble and associate.

5

36. The Ordinance prohibits more than two persons per bedroom up to 210 square feet plus an additional two persons.

37. The Ordinance also limits capacity to in properties over 210 square feet plus two persons.

38. Additionally, the Ordinance arbitrarily limits rentals to a maximum of five bedrooms in one dwelling unit and no more than five sleeping rooms available in properties located in R-1 or R-2 residential zones.

39. The Ordinance would effectively prohibit a family of five staying in a small dwelling unit.

40. Further, the Ordinance is arbitrary in imposing caps on the number of people that can stay in any single dwelling, which violates the constitutional rights to assemble and associate.

## COUNT IV: VIOLATION OF 42 U.S.C. § 1988

41. Plaintiff incorporates all other paragraphs of this Complaint herein by reference.

42. The Ordinance violates Plaintiff's civil rights, including but not limited to, numerous violations of state and federal laws and the provisions of the United States Constitution and Tennessee Constitution.

43. 42 U.S.C. § 1988 authorizes courts to award reasonable attorney's fees to prevailing parties in civil rights litigation.

44. The City of Chattanooga has violated numerous civil rights and therefore Plaintiff is entitled to an award of its attorney's fees and costs should it prevail on one or more claims herein.

## COUNT V: VIOLATION OF ARTICLE I, SECTION 21 OF THE TENNESSEE CONSTITUTION - TAKINGS CLAUSE

45. Plaintiff incorporates all other paragraphs of this Complaint herein by reference.

46. Article I, Section 21 of the Tennessee Constitution encompasses regulatory takings.

47. A regulatory taking is a regulation that deprives a property owner of an economic benefit.

6

48. The Ordinance discriminates against property owners in Chattanooga for the reasons alleged in this Complaint, but ultimately it prevents property owners from freely exercising their rights to rent their properties on a short-term basis without complying with the Ordinance.

49. Further, the Ordinance discriminates against owner-occupied and non-owner-occupied properties and subjects these different classifications to different standards to obtain permits.

50. Further, the Ordinance prohibits new owner's from obtaining permits unless a property is in a certain designated zone or is classified as commercial.

51. Further, the Ordinance improperly regulates renewals of permits for those that have already obtained permits under the previous code.

52. These discriminatory provisions harm Plaintiff in that property owners have suffered and will suffer economic losses.

**COUNT VI: VIOLATION OF U.S. CONST. AMEND. 14 AND ARTICLE I, SECTION 8 AND ARTICLE XI, SECTION 8, OF THE TENNESSEE CONSTITUTION (EQUAL PROTECTION)**

53. Plaintiff incorporates all other paragraphs of this Complaint herein by reference.

54. Plaintiff, as an association of citizens, have a fundamental right to equal protection under the law, both in the United States Constitution and Tennessee Constitution.

55. The Ordinance discriminates arbitrarily against non-owner-occupied vacation rentals and owner-occupied vacation rentals in various ways.

56. The Ordinance discriminates against these two classifications by imposing different fees for rental certificates.

7

57. The Ordinance discriminates against these two classifications by imposing different inspection requirements.

58. The Ordinance discriminates against these two classifications by imposing different requirements for qualifying for rental certificates.

59. The Ordinance further discriminates against property owners similarly situated depending on whether a property is in a commercial or residential zone.

60. The Ordinance further discriminates against property owners that have previously obtained the proper permits, and new applicants.

61. The Ordinance further discriminates against short term rental owners by treating them differently than similarly licensed businesses such as hotels, motels, and long-term rental properties.

62. The Ordinance further discriminates against similarly situated businesses and in that it requires an owner to designate a "short-term vacation rental agent" that can be on call 24 hours a day, 7 days a week for first responders, and someone who can respond to the property within two hours.

63. With the availability of technology, property owners can handle property issues remotely. Fire, water, health emergencies, and utility issues should be solely left to first responders. Vacation rental owners are singled out with this added burden of having a local agent available at all times.

### COUNT VII: VIOLATION OF U.S. CONST. ART. I, § 10 (CONTRACTS CLAUSE) AND ARTICLE I, SECTION 20 OF THE TENNESSEE CONSTITUTION (CONTRACTS CLAUSE)

64. Plaintiff incorporates all other paragraphs of this Complaint herein by reference.

65. Under the United States Constitution and Tennessee Constitution, no law shall be passed to impair the obligations of contracts.

8

66. The use of real estate is a fundamental right of a property owner.

67. Plaintiff and similarly situated property owners have a fundamental right to enter into contracts, such as leases, short-term or long-term.

68. The Ordinance imposes undue burdens on property owners by preventing owners from entering into contractual lease agreements for short-term vacation rentals.

69. Further, the Ordinance has impaired existing contracts of Plaintiff's members, and other similarly situated, with their tenants, by rendering it illegal for them to fulfill their rental contracts after the effective date of the Ordinance.

## COUNT VII: VOID FOR VAGUENESS AND ARBITRARY ENFORCEMENT VIOLATING DUE PROCESS

70. Plaintiff incorporates all other paragraphs of this Complaint herein by reference.

71. The Ordinance violates due process rights enshrined in the Fifth and Fourteenth Amendments of the United States Constitution and Article 1, Section 8 of the Tennessee Constitution.

72. First, the Ordinance reserves the City's right to "revoke a granted short-term vacation rental certificate at any time upon notice" and "after a public hearing once the property has three (3) documented violations…"

73. The Ordinance goes on to state that such violations shall be evidenced by a finding of guilt or fault by court "or other administrative officer or body designated by City Council."

74. This provision is unconstitutional in that it is vague for failing to define or place a certificate holder on notice of what may constitute a violation, or how the City may investigate or determine that a violation has occurred.

75. Moreover, this provision grants the City Council plenary power to arbitrarily appoint "an administrative officer or body."

9

76. Such a provision is arbitrary and capricious and is an unreasonable exercise of any type of police power the City could grant to an administrative officer or body.

77. As such, the Ordinance is unconstitutional.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands:

A. That the Court declare Ordinance 13981 and associated Code Sections to be unconstitutional;

B. That the Court enter an order permanently enjoining the City of Chattanooga from enforcing Ordinance 13981 and associated Code Sections;

C. For the costs and expenses of this action, plus attorney's fees allowed pursuant to 42 U.S.C. § 1988, T.C.A. § 29-14-111, and T.C.A. § 29-16-123(b);

D. For any such other and further relief deemed just and equitable.

Respectfully submitted,

**BOYD & WILLS, PLLC**

_/s/Bennett J. Wills_
Bennett J. Wills (#034831)
Brian T. Boyd (#023521)
Boyd & Wills, PLLC
750 Old Hickory Blvd.
Bldg. 2, Ste. 150
Brentwood, TN 37027
615-861-1936
bennett@boydwills.com
brian@boydwills.com
_Counsel for Plaintiff_

10

declared unconstitutional, and shall not affect any other section, clause or provision of this Article. Additionally, this Chapter shall in no way be used to supersede any privately created agreements or covenants by any homeowner associations or developers restricting certain uses.

**Sec. 38-441. Annual Review.**

The Development Review and Permitting Division will conduct at a minimum an initial annual review of the provisions of this Article. The Board of Zoning Appeals and/or its departmental designee, shall conduct an annual review of the appeals before that body and suggest any text amendments that may be appropriate to the City Council.

**Secs. 38-442—38-450. Reserved.**

SECTION 2. BE IT FURTHER ORDAINED, That this Ordinance shall take effect two

(2) weeks from and after its passage.

Passed on second and final reading: May 16, 2023

_____
CHAIRPERSON

APPROVED:____  DISAPPROVED:____

_____

_____
MAYOR

PAN/mem/v7/Alternate Version

9

13981

# IN THE CHANCERY COURT FOR HAMILTON COUNTY, TENNESSEE

| | | |
|---|---|---|
| GREATER CHATTANOOGA COALITION FOR PRIVATE PROPERTY RIGHTS, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No.: 23-0622 |
| v. | ) ) | |
| CITY OF CHATTANOOGA, | ) ) | |
| Defendant. | ) | |

## MOTION AND MEMORANDUM FOR PRELIMINARY INJUNCTION

COMES NOW, Plaintiff, Greater Chattanooga Coalition for Private Property Rights ("GCCPR"), and respectfully file this Motion for Preliminary Injunction pursuant to Tenn. R. Civ. P. 65. In support, Plaintiff states:

### INTRODUCTION

Plaintiff brings this lawsuit as a challenge to the constitutionality of Ordinance No. 13981 (hereinafter the "STR Ordinance"). The Ordinance was enacted by the City of Chattanooga on May 16, 2023, to go into effect two weeks later. (Complaint, ¶ 1).

The STR Ordinance, as enacted, amends and replaces Chattanooga City Code, Part II, Chapter 11, Article XX (Short Term Rental Vacation Rental Certificate), and creates new Chapter 38, Zoning, Division 27 (Uses Requiring Short Term Vacation Rental Certificates). (Complaint, ¶ 2).

The intent of the ordinance is to "provide appropriate opportunities for the development of short-term vacation rentals in the City of Chattanooga." (Ord. Section 38.431). (Complaint, ¶ 3). As alleged in the pleadings, this Ordinance and the associated code sections, violate the

2023 SEP 14 AM 10: 26

HAMILTON CO. [illegible]

1

This Motion will be heard in person on OCTOBER 2, 2023 at 1:30 p.m. at the docket call.

constitutional rights of short-term rental owners by drawing a distinction between owner-occupied STRs and non-owner-occupied STRs and by limiting certain STRs to commercial zones versus residential zones. (Ord., Section 38.431). (Complaint, ¶ 4). Further, the ordinance discriminates against non-owner-occupied applicants in that it charges a higher application fee and has more requirements related to inspections in order to qualify for a certificate. (Ord., Section 38-436(b)-(c)). (Complaint, ¶ 5). Further, the ordinance violates a property owners' First Amendment right to place signage on-site unless the rental is at least (5) five acres and does not have a dwelling visible from the public right-of-way. (Ord., Section 38-435(b)). (Complaint, ¶ 6).

## STANDARD OF LAW

Tenn. R. Civ. P. 65.01 provides trial courts with authorization to provide injunctive relief by issuing a preliminary, temporary injunction. A trial court should issue an injunction when:

> It is clearly shown by verified complaint, affidavit, or other evidence that the movant's rights are being or will be violated by an adverse party and the movant will suffer immediate and irreparable injury, loss or damage pending a final judgment in the action, or that the acts or omissions of the adverse party will tend to render such final judgment ineffectual.

*Gentry v. McCain*, 329 S.W.3d 786, 792-93 (Tenn. Ct. App. 2010) (quoting *S. Cent. Tenn. R.R. Auth. V. Harakas*, 44 S.W.3d 912, 919 (Tenn. Ct. App. 2000) and Tenn. R. Civ. P. 65.04(2)).

The standard of issuance of the injunction is guided by a four-part test:

> The most common description of the standard for a preliminary injunction in federal and state courts is a four-factor test: (1) the threat of irreparable harm to the plaintiff if the injunction is not granted; (2) the balance between this harm and the injury granting the injunction would inflict on the defendant; (3) the probability that plaintiff will succeed on the merits; and (4) the public interest.

*Id.* at 793 (quotations omitted). As observed by the Sixth Circuit, when considering injunctive relief: "These factors are not prerequisites which must be met but are interrelated considerations that must be balanced together." *Northeast Ohio Coalition for Homeless and Service Employees*

2

*v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (quotation omitted) (dismissed on other grounds in part in *Northeast Ohio Coalition for Homeless and Service Employees v. Blackwell*, 652 F. Supp. 2d 871 (S.D. Ohio 2009)). The Court need not consider each of these factors if fewer factors are "dispositive." *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003) (citations omitted).

## ARGUMENT

The foregoing factors weigh in favor of issuing the injunction. The claims raised in the instant motion are all substantially likely to prevail. Absent injunctive relief, the Plaintiff's constitutional rights will be immediately damaged. Additionally, their ability to consider important business and investment matters will be hampered. The City of Chattanooga will undergo no harm if the injunction was granted. And interest the City of Chattanooga has in the enforcement of the Ordinance would be reclaimed in full once a judgment was entered.

## I.   IRREPARABLE HARM

Plaintiff and its members will undergo immediate and irreparable harm absent an injunction. First, the Ordinance deprives Plaintiff of constitutional rights. *See Taubman Co. v. Webfeats*, 319 F.3d 770, 778 (6th Cir. 2003) (when constitutional rights are at issue "the likelihood of success on the merits is often the determinative factor."); *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). If there is no adequate remedy at law, an injunction is the proper form of relief. *See Pro. Home Health & Hospice, Inc. v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, 759 S.W.2d 416, 420 (Tenn. Ct. App. 1988).

As further briefed herein, Plaintiff has lost several constitutional freedoms under both the United States Constitution and Tennessee Constitution, including First Amendment, Fourteenth Amendment, and the Contracts Clause. The loss of such constitutional rights cannot be properly

3

compensated by a monetary judgment. Sure, there may be some ascertainable monetary losses – but the loss of a constitutional right is incalculable. This factor weighs strongly in Plaintiff's favor.

## II. BALANCING OF HARMS

Granting the injunction would cause no harm to the City of Chattanooga. Property owners would be free to operate short-term rentals as they have in the past several years. Those looking to convert dwellings into short-term rentals in any zone would now be eligible for a permit. And investors looking to purchase and operate short-term rentals in the City of Chattanooga would be eligible as well. This is actually a benefit to the City because of the potential economic benefit in terms of taxes, growth, and tourism.

There are plenty of health and safety codes that exist to ensure rentals are compliant with fire regulations, insurance needs, habitability, sanitation, noise ordinances, pollution, etc. Short-terms rentals often depend on customer reviews, so property owners have a vested interest in maintaining their properties to the highest degree.

If the City of Chattanooga prevailed here, it would be perfectly free to resume its regulation. This is not an instance where the Ordinance prevents some great harm that can never be undone. Nor it is a situation where the City of Chattanooga would lose significant economic opportunities. In other words, the City of Chattanooga has nothing to lose; but the people do.

In contrast, the Ordinance takes a great toll on property owners, such as Plaintiff and its members. It chills civil liberties and has a detrimental impact to the City of Chattanooga. The balance of hardships tilts overwhelmingly in the Plaintiff's favor.

## III. SUCCESS ON THE MERITS

Plaintiff is highly likely to prevail on each individual claim in the Complaint.

4

## A. Freedom of Speech and Freedom of Association

The Ordinance's restriction and total ban of on-site signage violates Plaintiff's constitutional rights to freedom of speech.[1] Specifically, section 38-435(d) of the Ordinance prohibits "on-site" signage for vacation rentals except for those that are at least five acres and have a dwelling unit that is not visible from the street. Further, section 38-435(d) prohibits "off-site" signage except for any city designated required signage for designated parking spaces.

Freedom of speech is one of the most protected constitutional rights. "Regulations which restrain speech on the basis of content presumptively violate the First Amendment." *State v. Smoky Mountain Secrets, Inc.*, 937 S.W.2d 905 (Tenn. 1996) ("the free flow of commercial information is indispensable to the public"). Those protections apply to commercial speech. *See Va. Bd. Of Pharmacy v. Va. Citizen's Consumer Council*, 425 U.S. 748, 765 (1976) ("the free flow of commercial information is indispensable to the public."). The right to freedom of speech is fundamental and is reviewed under a strict scrutiny analysis. *Bemis Pentecostal Church v. State*, 731 S.W.2d 897 (Tenn. 1987). However, as a general rule, courts have been more permissive of restrictions on advertising. *See, e.g., Central Hudson Gas & Electric Co. v. Public Service Commission of New York*, 447 Y.S. 557 (1980) (articulating a four-part intermediate scrutiny test to restrictions on commercial speech).

Likewise, the same protections are extended to the freedom of association; and together these First Amendment freedoms apply to those that are engaged in business activities. *Thomas v. Collins*, 323 U.S. 516, 531 (1945).

---

[1] *See* U.S. Const. amend. I (Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech...); *see also* Tenn. Const. Art. I, § 19 (The free communication of thoughts and opinions, is one of the invaluable rights of man and every citizen may freely speak, write, and print on any subject, being responsible for the abuse of that liberty).

5

When a municipality enacts an ordinance that targets speech based on content, the ordinance is "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Gilbert*, 135 S. Ct. 2218, 2225 (2015) (internal citations omitted). It does not make a difference if a content-based law was motivated by legitimate concerns like nuisance regulations. *See H&L Messengers v. Brentwood*, 577 S.W.2d 444, 453 (Tenn. 1979) (commercial speech restrictions, regulations, and exemptions so based are constitutionally offensive whether evil or benign).

Here, the Ordinance fails to articulate and reason for the signage prohibition. Such a blanket prohibition on on-site or off-site signage for vacations rentals clearly targets speech - commercial or otherwise – because it only applies to vacation rental properties. A neighboring property is free to put up signs advertising their property as a long-term type of rental. This is an example of content-based discrimination.

When applying the strict scrutiny test, the City of Chattanooga must show that the "restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 135 S. Ct. at 2231 (internal citations and quotations omitted). "Content-based regulations are presumptively invalid." *R.A.V. v. St. Paul*, 505 U.S. 377, 382 (1992) (citations omitted). The City of Chattanooga must show that the Ordinance's differentiation between vacation rental signage and other types of signs further a compelling governmental interest and is narrowly tailored to that end. *Reed*, 135 S. Ct. at 2231. Plaintiffs "must be deemed likely to prevail" unless the City of Chattanooga can show that there are no less restrictive means. *Ashcroft v. ACLU*, 542 U.S. 656 (2004).

The Court cannot defer to the City of Chattanooga's assessment of harms and remedies. In trying to ban advertising of short-term rentals, the City of Chattanooga cannot meet its burden "by

6

mere speculation or conjecture." *Edenfield v. Fane*, 507 U.S. 761, 771 (1993) (using intermediate scrutiny). The harms the Ordinance is designed to address must be real and not speculative and the Court must also scrutinize whether the Ordinance actually works, meaning that "its restriction will in fact alleviate the harm to a material degree." *Edenfield*, 507 U.S. at 770-771. The signage restriction must serve the stated interest in a "direct and material manner." *Id.*

The Ordinance also fails under a strict scrutiny analysis. There is no interest, let alone a compelling one, in totally banning short-term rental signage, or restricting it more narrowly than other, similar signs. *See Peel v. Attorney Registration and Disciplinary Commission*, 496 U.S. 91, 111 (1990) ("State may not...completely ban statement that are not actually or inherently misleading."). For example, a "For Rent" sign is no different than a sign that reads "For Rent on AirBnb." There is simply no compelling reason prohibiting signage in all circumstances that provide helpful information to visitors. Moreover, the is no compelling reason to place caps on the amount of people that may stay in any one particular rental or place arbitrary limits on square footage and caps on the number of rooms a rental may have. These items are covered by the fire safety code; but exist only as arbitrary limits in the Ordinance.

The Ordinance is unconstitutional on these grounds because it is violative of Plaintiff's First Amendment freedoms of speech and association.

### B. Equal Protection

"Both the United States and Tennessee Constitutions guarantee to citizens the equal protection of the laws....[w]e have consistently held that these two provisions confer the same protections as does the Fourteenth Amendment to the United States Constitution." *State v. Tester*, 879 S.W.2d 823, 827 (Tenn. 1924); *Tennessee Small School Sys. v. McWherter*, 851 S.W.2d 139, 152 (Tenn. 1993). Thus, in analyzing equal protection challenges, we have followed

7

the analytical framework developed by the United States Supreme Court, which, depending on the nature of the right asserted, applies one of three standards of scrutiny: (1) strict scrutiny, (2) heightened scrutiny, and (3) reduced scrutiny, applying the rational basis test. *State v. Tester,* 879 S.W.2d at 828; *Tennessee Small School Sys. v. McWherter,* 851 S.W.2d at 153. *State v. Smoky Mountain Secrets, Inc.,* 937 S.W.2d 905 (Tenn. 1996).

Equal protection analysis requires strict scrutiny of a legislative classification only when the classification interferes with the exercise of a "fundamental right" or operates to the peculiar disadvantage of a "suspect class." *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 16, 93 S.Ct. 1278, 1287, 36 L.Ed.2d 16 (1973). *State v. Smoky Mountain Secrets, Inc.,* 937 S.W.2d 905, 911 (Tenn. 1996).

A property owner's right to own, use, and enjoy private property is a fundamental right. *McArthur v. East Tenn. Natural Gas Co.,* 813 S.W.2d 417, 419 (Tenn.1991); *State v. Gainer,* 22 Tenn. (3 Hum.) 39, 40 (1842). As such, this Court has held that,

> every proprietor of land, where not restrained by covenant or custom, has the entire dominion of the soil and the space above and below to any extent he may choose to occupy it, and in this occupation he may use his land according to his own judgment, without being answerable for the consequences to an adjoining owner, unless by such occupation he either intentionally or for want of reasonable care and diligence inflicts upon him an injury.

*Humes v. Mayor of Knoxville,* 20 Tenn. (1 Hum.) 403, 407 (1839); *see also McArthur v. East Tenn. Natural Gas Co.,* 813 S.W.2d 417, 419 (Tenn.1991) (A property owner's right to own, use, and enjoy private property is a fundamental right).

For example, Tennessee law does not favor restrictive covenants imposed by homeowner's associations, because such restrictions are in derogation of the rights of free us and enjoyment of property. *Hughes v. New Life Dev. Corp.,* 387 S.W.3d 453, 474 (Tenn. 2012). Other than a homeowner's association not being a government body, the Ordinance here is no different. It is a

8

derogation of the rights of free use and enjoyment of property implicating a fundamental right – so strict scrutiny applies.

The Ordinance discriminates in several ways:

- Discriminates against owner-occupied and non-owner-occupied property owners; as compared to long-term rental owners that have no such restrictions imposed by the Ordinance.

- Fees for permits are applied differently to owner-occupied versus non-owner-occupied.

- The inspection requirements are applied owner-occupied versus non-owner-occupied.

- The Ordinance discriminates against owner-occupied and non-owner-occupied properties by imposing different requirements for qualifying for rental certificates.

- The Ordinance has different requirements for property owners in commercial zones versus residential zones.

- The Ordinance is discriminatory in that it treats short-term rental owners differently than similarly licensed business such as hotels, motels, and long-term rental properties.

- The Ordinance requires short-term rental owners to have an agent available and on call 24 hours a day, 7 days a week; which does not apply to similarly situated businesses or long-term rentals.

The overarching issue on all of these points is that the Ordinance restricts the use of short-term rentals and discriminates against different classes of property owners and business owners. When applying the strict scrutiny test, the City of Chattanooga must show that the "restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 135 S. Ct. at 2231. The only articulated interest is "is to provide appropriate opportunities for the development of short-term vacation rentals in the City of Chattanooga." (Ordinance, p. 1).

9

The foregoing list of restrictions are certainly not narrowly tailored to achieve appropriate opportunities for the development of short-term rental vacations. Each listed restriction is not only arbitrary but extraordinarily overbroad. In fact, these restrictions do just the opposite than *provide* reasonable opportunities. Instead, they restrict the free use of property rights across the board which is a blanket violation of Plaintiff's fundamental rights. The Ordinance must be declared unconstitutional because it violates the tenants of equal protection.

### D. Takings Clause

The Tennessee Constitution prevents the government from taking private property. "That no man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor." Tenn. Const. art. I, § 21.

The United States Supreme Court has recognized that an unconstitutional government taking may occur when a regulation simply goes "too far." *Cedar Point Nursery v. Hassid*, 591 U.S. 141 S. Ct. 2063, 2072 (2021); *see Home v. Department of Agriculture*, 576 U.S. 350, 360 (2015); *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922) (holding that "while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking").

There are two types of takings: (1) a physical taking; and (2) nuisance-type taking. Physical occupation takings arise when a governmental defendant causes either a direct and continuing physical invasion of private property or a destruction of a plaintiff's property rights. *Edwards v. Hallsdale-Powell Util. Dist. Knox Cnty., Tenn.*, 115 S.W.3d 461, 465 (Tenn. 2003) (internal citations omitted).

10

Tennessee courts also recognize nuisance-type takings which occurs when the governmental defendant interferes with a landowner's beneficial use and enjoyment of the property. *Id.*

To amount to a "taking," the interruption or interference must be serious or significant, *Johnson v. City of Greeneville,* 222 Tenn. at 269, 435 S.W.2d at 480; *Barron v. City of Memphis,* 113 Tenn. at 92, 80 S.W. at 832–33, and must produce a particular and direct effect on the property involved not shared by the general public. *Johnson v. City of Greeneville,* 222 Tenn. at 269, 435 S.W.2d at 480; *Illinois Cent. R.R. v. Moriarity,* 135 Tenn. at 453, 186 S.W. at 1054. The disruption must be more than "momentary," *Obion County v. Edwards,* 159 Tenn. 491, 493, 19 S.W.2d 236, 237 (1929), but need not be permanent or irremediable as long as it affects the "usable and rental or permanent value of the property." *Louisville & Nashville Terminal Co. v. Lellyett,* 114 Tenn. 368, 402, 85 S.W. 881, 889 (1905). *Betty v. Metro. Gov't of Nashville & Davidson Cnty.,* 835 S.W.2d 1, 7 (Tenn. Ct. App. 1992), *overruled on other grounds by Edwards v. Hallsdale-Powell Util. Dist. Knox Cnty., Tenn.,* 115 S.W.3d 461 (Tenn. 2003).

The Ordinance here amounts to a nuisance taking because it affects the usable and rental value of the Plaintiff's properties. It is also not a momentary disruption – but rather a permanent disruption so long as the Ordinance remains in effect. On this basis, the Ordinance must be declared to be an unconstitutional taking of private property.

### E. Contracts Clause

The Contract Clause of the Tennessee Constitution provides "[t]hat no retrospective law, or law impairing the obligations of contracts shall be made." Tenn. Const. art. I, § 20. The Contract Clause of the United States Constitution similarly provides that "[n]o state shall . . . pass any . . . law impairing the obligation of contracts . . . ." U.S. Const. art. I, § 10. The Tennessee Supreme

11

Court has stated that the meaning of these two constitutional provisions is identical. *First Util. Dist. of Carter Cnty. v. Clark*, 834 S.W.2d 283, 287 (Tenn. 1992).

As interpreted by the Tennessee Supreme Court, the Contract Clause "does not mean that absolutely no retrospective law shall be made." *Dark Tobacco Growers' Co-op. Ass'n v. Dunn*, 150 Tenn. 614, 632, 266 S.W. 308, 312 (1924). Rather, a "retrospective law" that violates the Contracts Clause is one that takes away or impairs vested rights acquired under existing laws, creates a new obligation, imposes a new duty, or attaches a new disability in respect of transactions or considerations already passed. *See Doe v. Sundquist*, 2 S.W.3d 919, 923 (Tenn. 1999); *Dark Tobacco*, 150 Tenn. at 632, 266 S.W. at 312. Stated another way, a constitutionally objectionable retrospective law is one that "operates forward but looks backward in that it attaches new consequences or legal significance in the future to past acts or facts that existed before the statute came into effect." *Estate of Bell v. Shelby Cnty. Health Care Corp.*, 318 S.W.3d 823, 836 n. 4 (Tenn. 2010).

Here, the Ordinance impairs both prior and future contracts. Property owners' contract with individuals to rent their properties on a short-term basis. The basis tenants of contract exist in every transaction – there is an offer to rent property, an acceptance by making a reservation, and an exchange of money, or consideration, for the use of a property. The Ordinance prevents property owners from exercising their fundamental constitutional rights to enter into such agreements, which is prohibits by the contracts clause. On this basis, the Ordinance must be declared to be unconstitutional.

12

## F. The Ordinance is Void for Vagueness and Violates Due Process

Due process rights are enshrined in the Fifth[2] and Fourteenth[3] Amendments of the United States Constitution and Article 1, Section 8, of the Tennessee Constitution.[4]

> The language of the "due process" provisions in the United States Constitution differs from the "law of the land" provision found in the Tennessee Constitution. Although the terms on occasion have been viewed as synonymous, *Daugherty v. State,* 216 Tenn. 666, 393 S.W.2d 739, 743 (1965), the United States Supreme Court's interpretations of the United States Constitution establish a minimum level of protection while this Court, as final arbiter of the Tennessee Constitution, is always free to extend greater protection to its citizens. *Doe v. Norris,* 751 S.W.2d 834, 838 (Tenn. 1988).

*Seals v. State*, 23 S.W.3d 272, 277 (Tenn. 2000).

The federal and state due process clauses prevent the government from infringing upon significant property or liberty interests without first providing notice and an opportunity to be heard at a meaningful time and in a meaning manner. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). However, before such procedural safeguards are required, several factors must be established. *State v. AAA Aaron's Action Agency Bail Bonds, Inc.,* 993 S.W.2d 81, 85 (Tenn. Crim. App. 1998).

> First, a constitutionally protected liberty or property interest must be possessed by the party allegedly aggrieved. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569–78, 92 S.Ct. 2701, 2705–06, 2709, 33 L.Ed.2d 548 (1972). The right to engage in a chosen business, occupation, or profession without unreasonable governmental interference or deprivation thereof is both a liberty and property interest, protected by the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution and Article I Section 8 of the Tennessee Constitution. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. at 543,

---

[2] "No person shall ... be deprived of life, liberty or property, without the due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. amend V.

[3] No "State [shall] deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV.

[4] "That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land." Tenn. Const. art. I, § 8.

13

105 S.Ct. at 1494; *see also Livesay v. Tennessee Board of Examiners in Watchmaking*, 204 Tenn. 500, 322 S.W.2d 209 (1959). *Harbison v., Knoxville Iron Company*, 103 Tenn. 421, 53 S.W. 955 (1899), *aff'd by*, 183 U.S. 13, 22 S.Ct. 1, 46 L.Ed. 55 (1901).

*State v. AAA Aaron's Action Agency Bail Bonds, Inc.*, 993 S.W.2d 81, 85 (Tenn. Crim. App. 1998).

Additionally, there must be a deprivation of that interest by the government. *See Rowe v. Board of Educ. of City of Chattanooga*, 938 S.W.2d 351, 354 (Tenn.1996), *cert. denied*, 520 U.S. 1128, 117 S.Ct. 1271, 137 L.Ed.2d 349 (1997) (citation omitted). *State v. AAA Aaron's Action Agency Bail Bonds, Inc.*, 993 S.W.2d 81, 85 (Tenn. Crim. App. 1998).

Once it is determined that due process applies, the interests of AAA and the government must be weighed to determine what process is due and whether deprivation has occurred. *Federal Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 240, 108 S.Ct. 1780, 1787, 100 L.Ed.2d 265 (1988); *Board of Regents of State Colleges v. Roth*, 408 U.S. at 569–570, 92 S.Ct. at 2705. *State v. AAA Aaron's Action Agency Bail Bonds, Inc.*, 993 S.W.2d 81, 85 (Tenn. Crim. App. 1998).

Due process requires notice and an opportunity to be heard.

Due process requires "notice reasonably calculated under all the circumstances, to apprise interested parties" of the claims of the opposing parties. *McClellan v. Board of Regents of State University*, 921 S.W.2d 684, 688 (Tenn.1996) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). The purpose of due process requirements is to notify the individual in advance in order to allow adequate preparation and reduce surprise. *Id.* (citing *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 14, 98 S.Ct. 1554, 1562–63, 56 L.Ed.2d 30 (1978)). In other words, the contents of the notice cannot be ambiguous or obscure; they must clearly inform the person of the nature of the charge against him. *See Turk v. Franklin Special School Dist.*, 640 S.W.2d 218, 220 (Tenn.1982). To comport with these notions of fair play, the means employed should equal or exceed that which one desirous of actually informing the opposite party would employ. *Id.* (citations omitted). Under these standards, the trial court's May 2 order suspending AAA from writing bail bonds "as the result of the actions of [AAA] on Wednesday, April 23, 1997" cannot be held sufficient to

14

adequately apprise AAA of the charges to be met. Thus, notice was constitutionally inadequate.

*State v. AAA Aaron's Action Agency Bail Bonds, Inc.*, 993 S.W.2d 81, 86 (Tenn. Crim. App. 1998).

In addition to guaranteeing a person with notice, due process provides an opportunity to be heard. The opportunity to present reasons, either in person or in writing, why a proposed action should not be taken is a fundamental due process requirement. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495 (citation omitted).

*State v. AAA Aaron's Action Agency Bail Bonds, Inc.*, 993 S.W.2d 81, 86 (Tenn. Crim. App. 1998).

The Ordinance reserves the City's right to "revoke a granted short-term vacation rental certificate at any time upon notice" and "after a public hearing once the property has three (3) documented violations..." The Ordinance goes on to state that such violations shall be evidenced by a finding of guilt or fault by court "or other administrative officer or body designated by City Council."

There are several issues here. "Documented violations" is not defined and begs the question documented violations of what? A violation of city noise laws, pollution, nuisance, parking tickets, or other code violations, or a violation of the Ordinance itself? This language points to no statutory authority or code section that may constitute a potential violation or a penalty. Moreover, the wording here is so overbroad that the City of Chattanooga could use *any* violation of *any* law as a basis to revoke a rental certificate. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *American Show Bar Series, Inc. v. Sullivan County*, 30 S.W.3d 324 (Tenn. Ct. App. 2000) citing *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). This is vague and overbroad and must be declared unconstitutional.

15

## IV. Public Interest

The intent behind the Ordinance "is to provide appropriate opportunities for the development of short-term vacation rentals in the City of Chattanooga." (Ordinance, p. 1). However, the Ordinance fails to define or expound upon the meaning of "appropriate opportunities." The public interest is served by granting the injunction because the public as a whole has significant interest in the protection of civil liberties guaranteed by the U.S. Constitution and Tennessee Constitution. *See Husted*, 751 F.3d at 412 (quoting *Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1490 (6th Cir 1995) (the public as a whole as a significant interest in … protection of First Amendment Liberties). This rule applies with more force given the other constitution rights that are implicated.

The public interest is also served because this a new Ordinance that affects a great number of people. It affects local property owners, investors, and those who have complied with the short-term rental laws that may no longer be eligible for permit renewal. Moreover, it affects the City of Chattanooga as a whole due to its broad application. If anything, the Ordinance serves only to hinder the development of short-term rental properties in the community.

If the intent is truly to provide appropriate opportunities for the development of short-term vacation rentals, then the Ordinance should apply with equal force to all and not discriminate against different classes of property owners. And it definitely should not operate to chill civil liberties of any citizen.

### WAIVER OF BOND

Under Tenn. R. Civ. P. 65.05, the applicant for an injunction must provide a bond for the payment of costs and damages as may be incurred or suffered by any person who would have been wrongfully enjoined. The bond is an issue for the Court to determine. *See Moltan Co. v. Eagle-*

16

*Picher Indus.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (courts "possess discretion over whether to require the posting of security.").

A bond here is unnecessary and, in fact, does not make sense. The bond is to be set in the amount of "costs and damages as may be incurred or suffered by any person who is found to have been wrongfully restrained or enjoined." Tenn. R. Civ. P. 65.05(1). There are no costs and damages that could result. The parties are not suing each other over money. Indeed, even Plaintiffs are not requesting compensatory damages. This case only seeks injunctive and declaratory relief so there will be no financial loss to the City of Chattanooga if this Court grants a preliminary injunction.

**CONCLUSION**

Plaintiff respectfully requests this Court rule on this matter, or in the alternative, set this matter for a hearing at the earliest possible date so they need not suffer any further erosion of their constitutional rights. All of the factors in determining whether to issue an injunction weigh heavily in the Plaintiff's favor. This Court should not hesitate to issue a preliminary injunction finding that the Plaintiff has a high likelihood of prevailing in their claim that the Ordinance does not apply to them and by enjoining the City of Chattanooga from enforcing the Ordinance.

Respectfully submitted,

**BOYD & WILLS, PLLC**

*/s/Bennett J. Wills*
Bennett J. Wills (#034831)
Brian T. Boyd (#023521)
Boyd & Wills, PLLC
750 Old Hickory Blvd.
Bldg. 2, Ste. 150
Brentwood, TN 37027
615-861-1936
bennett@boydwills.com
brian@boydwills.com
*Counsel for Plaintiff*

17

## VERIFICATION BY PLAINTIFF

Pursuant to Tenn. R. Civ. P. 72, I Bradley Wardlaw, Director of the Greater Chattanooga Coalition for Private Property Rights, do hereby declare that the Verified Complaint is true and accurate to the best of my knowledge, information, and belief.

Date: 9/14/2023

_____
Bradley Wardlaw, Director

11

# EXHIBIT A

ORDINANCE NO. 13981

AN ORDINANCE AMENDING CHATTANOOGA CITY CODE,
PART II, CHAPTER 11, ARTICLE XX, SHORT TERM
VACATION RENTAL CERTIFICATE AND CREATING A NEW
CHAPTER 38, ZONING, DIVISION 27, USES REQUIRING
SHORT TERM VACATION RENTAL CERTIFICATES.

BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF CHATTANOOGA,

TENNESSEE:

SECTION 1. That Chattanooga City Code, Part II, Chapter 11, Article XX, Short Term

Vacation Rental Certificate, be amended by deleting same in its entirety and substituting in lieu

thereof the following new provisions in Chapter 38, Zoning, Division 27:

**DIVISION 27. USES REQUIRING SHORT TERM
VACATION RENTAL CERTIFICATES[1]**

**Sec. 38-431. Intent.**

Unless otherwise identified as of the effective date of this Ordinance, new Non-owner occupied/Absentee properties shall only be allowed throughout the City in the following commercial zones: C-2, C-3, C-4, C-5, UGC, CC, IX, RF, RV, CX-Commercial, and SH zones as defined under the Zoning Ordinance. They shall also be allowed within any parcel of at least twenty (20) acres or more with common ownership that allows for residential uses.

The intent of this ordinance is to provide appropriate opportunities for the development of short-term vacation rentals in the City of Chattanooga. Unless otherwise identified, Owner-occupied, or Homestay, shall be allowed in all zones that residential uses are allowed within the existing overlay district map currently referenced in Section 38-432 and/or in the specified commercial zones listed above.

**Sec. 38-432. Definitions.**

[1]Ord. No. 13286, § 1, adopted March 6, 2018, set out provisions intended for use as art. XVIII, §§ 11-470—11-498. Inasmuch as there were provisions already so designated, at the editor's discretion, these provisions Code of Ordinance, a "Short-term vacation rental" A document executed by a short-term vacation owner certifying that a short-term vacation rental unit complies with applicable zoning, building, health and life safety code provisions. No person shall allow occupancy or possession of any short-term

2023 SEP 14 AM 10: 26

FILED
HAMILTON ...

1

13981

vacation rental unit if the premises are in violation of any applicable laws including, but not limited to, zoning, building, health or life safety code provisions.

*Short-term vacation rental:* Any or other structure containing no more than five (5) bedrooms within permissible zones which is used, advertised or held out to the public in part or its entirety to be a place where sleeping accommodations are supplied for pay and such accommodations are provided on a daily or weekly basis for not more than thirty (30) days for overnight stay. For the purposes of this definition, any short-term vacation rental on a site located in either the R-1 or R-2 Residential Zones, shall contain no more than five (5) bedrooms, and shall exclude hotels, rooming houses, bed and breakfast, and boarding houses, or other licensed multi-family dwelling units for rent or lease, as defined in Section 21-67 and/or Section 11-186 and/or Section 38-2. No multi-family dwelling units shall exceed a maximum of 25% of the total units in a given building or structure.

*Short-term vacation rental certificate:* A certificate issued annually by the City of Chattanooga allowing a person or entity to operate a short-term vacation rental.

*Short-term vacation rental agent:* A natural person designated to be responsible for daily operations by the owner of a short-term vacation rental on the short-term vacation rental certificate application. Such person shall be available for and responsive to contact at all times and someone who is customarily present at a location within Hamilton County for purposes of transacting the short term vacation rental business. The short term vacation rental agent must meet all other requirements set forth by state law.

*Short-term vacation rental district:* That certain area of the City of Chattanooga as determined by the Chattanooga City Council as the Short-Term Vacation Rental district and incorporated herein as Exhibit A to this Section as amended from time to time.

Editor's note(s)—A copy of the Short-Term Vacation Rental Overlay District Map, referenced above as Exhibit A, is available for inspection in the offices of the City Council Clerk.

*Short-term vacation rental occupants:* Guests, tourists, lessees, vacationers, or any other person who, in exchange for compensation, occupy a short-term vacation rental dwelling unit for lodging for a period of time not to exceed thirty (30) consecutive days.

*Short-term vacation rental occupancy.* There shall be two designations regarding the occupancy status of a short-term vacation rental.

    (i)   Homestay: A short-term vacation rental property which is the primary residence of the applicant. "Primary" is defined as the residence of the applicant at least 183 days a year.

    (ii)  Absentee: A short-term vacation rental property which is not the primary residence of the applicant.

### Sec. 38-433. Location and Number

(a)   A Homestay short-term vacation rental may be located in any residential zone within the overlay district set forth in Section 38-432 and any commercial or form-based zones that allows any single unit detached or accessory dwelling units that permits two-unit or multi-unit living.

13981

(b) A short-term vacation rental shall not be permitted to operate in any capacity on property or within structures that are part of an Affordable Housing PILOT Program.

(c) A short-term vacation rental may include a primary dwelling unit or a secondary (accessory) dwelling unit but not both structures on one lot.

## Sec. 38-434. Certificate required.

(a) No person or entity shall operate a short-term vacation rental unless a Short-term vacation rental certificate has been first obtained from the City of Chattanooga Development Review and Permitting Division. To obtain a short-term vacation rental certificate, an eligible applicant must submit an application and a Code compliance verification form in compliance with Section 38-435 of this City Code. If approved, a legible copy of the Short-term vacation rental certificate shall be posted within the unit. The City of Chattanooga Development Review and Permitting Division shall establish the information to be included upon the Short-term Vacation Rental Certificate.

(b) Short-term Vacation Rentals must be properly maintained and regularly inspected by the owner to ensure continued compliance with applicable zoning, building, health and life safety local and state laws.

## Sec. 38-435. Minimum standards for short-term vacation rentals.

(a) A short-term vacation rental cannot include uninhabitable structures such as garages, barns or sheds.

(b) Any dwelling unit for short-term vacation rentals must have functioning smoke detectors as determined by the Fire Marshal and other life safety equipment as required by local, state, and federal law.

(c) Dwelling unit must meet all applicable laws related to zoning, building, health or life safety.

(d) No on-site signage shall be permitted except for those vacation rentals that are at least five (5) acres and have a dwelling unit that is not visible from the public right-of-way, can have directional signs placed on the parcel that shall be at least fifty (50) feet from the public right-of-way. No off-site signage except for any designated city required signage and signage for designated parking spaces to be used by occupants of the Short-Term Vacation Rental. Such signs shall not be larger than three (3) square feet.

(e) There shall be no more than five (5) bedrooms made available for rental in one dwelling unit. There shall be no more than five (5) sleeping rooms made available for a site located in the R-1 or R-2 Residential Zones.

(f) Maximum Occupancy: The maximum occupancy shall be determined by the total of:

    (i) Two (2) persons per bedroom up to two hundred ten (210) square feet plus an additional two (2) persons.

    (ii) For bedrooms over two hundred ten (210) square feet the occupant load will be determined by the area of the room divided by seventy (70) square feet plus an additional two (2) persons.

3

13981

(iii) The occupancy maximum shall be conspicuously posted within the short-term vacation rental unit.

(g) The short-term vacation rental owner shall not receive any compensation or remuneration to permit occupancy of a short-term vacation rental property for a period of less than twenty-four (24) hours.

(h) The short-term vacation rental certificate holder shall be responsible for collecting and remitting all applicable room, occupancy, and sales taxes required by state law and the City Code of the City of Chattanooga.

(i) Adequate on-site parking shall be provided, as determined by the City after considering proposed number of guests, frequency of operations, and availability of on-street parking. As a general rule, parking shall not be allowed on any vegetated area of the premises on which the short-term vacation rental is located.

(j) All occupants shall abide by all applicable noise restrictions and all applicable waste management provisions of the City Code of the City of Chattanooga. All occupants shall comply with City Code Section 25-69.

(k) The name and telephone number of the owner of the short-term vacation rental or the short-term vacation rental agent shall be conspicuously posted within the short-term vacation rental.

(l) The premises on which the short-term vacation rental has not been found to be in violation of any City Code provision by City Court within the six (6) months prior to submitting an application for a short-term vacation rental certificate.

(m) Ownership information and contact information for the short-term vacation rental agent shall be posted on a public website or as determined appropriate by the City of Chattanooga.

### Sec. 38-436. Certificate application; action on certificate application; certificate approval or denial; appeals to the Short-Term Vacation Rental Board of Zoning Appeals.

(a) *Certificate applications.* Any person or entity wishing to operate a Short-term Vacation Rental within the limits of the City of Chattanooga shall be required to submit, under oath, a Short-term vacation rental certificate application to the Development Review and Permitting Division for review. The City of Chattanooga Development Review and Permitting Division shall establish the information present on the Short-term vacation rental certificate application and the Code compliance verification form as well as what information is required for the completion of said application.

(b) *Application fee.* The non-refundable application fee for all Short-term Vacation Rentals shall be as follows in addition to any applicable transaction related fees:

Absentee STVRs:

Initial application fee: $500

Renewal fee: $500

Homestay STVRs:

4

13981

Initial application fee: $250

Renewal fee: $250

This application fee shall be paid in full before any application is reviewed by the Development Review and Permitting Division.

(c) *Application review.*

    (i) The City of Chattanooga Development Review and Permitting Division shall review all applications for Homestay and Absentee short-term vacation rentals and provide comment where necessary. If additional materials are found to be required, a designated representative of the City may ask for them at any time. Upon completion of application requirements as set forth in this Chapter, and upon tendering of the requisite application fee, the certificate shall be issued.

    (ii) Homestay dwellings applying for a short-term vacation rental certificate:

        (A) For Homestay dwellings, the applicant/owner must be a natural person or a business entity (*i.e.*, a Tennessee LLC, corporation, partnership etc.) whose business entity applicant lives on premises and can establish proof of ownership annually.

        (B) Residency of all applicants must be proved annually during renewal with driver's license number, business records, or other documentation acceptable to the Development Review and Permitting Division.

    (iii) Absentee dwellings applying for a short-term vacation rental certificate:

        (A) For Absentee dwellings, the Development Review and Permitting Division shall notify the Fire Marshal and a City Building Inspector and request that inspections be conducted to ensure that the property and any associated structures on the property are in compliance with state and local laws.

        (B) When the application for an absentee Short term vacation rental meets all of the requirements set forth in this Chapter, and passes all inspections required pursuant to Section 38-435, the Development Review and Permitting Division shall issue to the applicant, a Short-term vacation rental certificate.

        The Development Review and Permitting Division does not send notification letters of applications for short-term vacation rentals nor is the applicant required to post a notification sign.

    (iv) Homestay and Absentee for a short-term vacation rental certificate:

        (A) If the Development Review and Permitting Division denies an application for a Homestay or an Absentee short-term vacation rental certificate, the applicant has the right to appeal the denial from the Development Review and Permitting Division to the Board of Zoning Appeals. The applicant also has the right to appeal a denial from the Board of Zoning Appeals to Chancery Court. Any appeal must be made within sixty (60) days of the date of denial or revocation of any permit.

        (B) The applicant must be present at the appeal hearing before the Board of Zoning Appeals, regardless of whether the appeal is initiated by the Development Review and Permitting Division or the applicant. Any applicant not present at the appeal

hearing shall result in an automatic denial of the Short-Term Vacation Rental Certificate by the Board of Zoning Appeals.

(C) If the certificate is still denied after the appeal hearing, the applicant must wait twelve (12) months before reapplying for a Short-term vacation rental certificate.

(D) If a property owner or applicant requests to be rezoned to R-2, R-3MD, R-3, R-4 or any commercial zone that permits residential uses or any Form-based Code Zone that permits two-unit or multi-unit living, such request is granted, the owner or applicant may not apply for an absentee short term vacation rental certificate within eighteen (18) months of the effective date of rezoning.

(v) *Application lifetime.* An application shall be valid for a period of sixty (60) days from the date of application submission. After sixty (60) days, an application that has not received a certificate may be discarded.

## Sec. 38-437. Certificate approval, transferability, conditions, and revocation.

(a) *Certificate approval.* The Certificate shall be issued for the specific site location and/or address of the proposed short-term vacation rental applicant provided in the application as set forth in Section 38-435 of this City Code. The Development Review and Permitting Division reserves the right to condition the approval to a certain number of rooms, operating days/hours, signage, or other restrictions as may be deemed necessary to address impacts to bordering properties or to ensure safe operation of the property. Said conditions will be based on the recommendation of the Development Review and Permitting Division.

(b) Upon issuance of a short-term vacation rental certificate, the Development Review and Permitting Division will also issue a certificate number. The certificate number shall be displayed on any materials or platforms used to advertise the short-term vacation rental.

(c) *Grant or denial of application.* Review of an application shall be conducted in accordance with due process principles and shall be granted unless the applicant fails to meet the conditions and requirements of this Chapter, or otherwise fails to demonstrate the ability to comply with local, state, or federal law. Any false statements or information provided in the application are grounds for denial of an application for a Short-term vacation rental, revocation or suspension of an existing Short-term vacation rental certificate and/or imposition of penalties, including denial of future applications. After sixty (60) days, an application that has not received a certificate may be discarded, unless delay has been the result of delay of action by the Development Review and Permitting Division or other City department as determined by the Director of the Development Review and Permitting Division.

(d) *Transferability.* The certificate is non-transferable to another site, property, or location. Any change of ownership for the short-term vacation rental unit is allowed as long as the transferring owner or operator and the prior owners of the unit have not subject to revocation for at least one (1) year prior to the transfer.

6

13981

(e) *Revocation.* The City reserves the right to revoke a granted short-term vacation rental certificate at any time upon notice to the owner and the short-term vacation rental certificate Agent and after a public hearing once the property has three (3) documented violations of City Code or State Law as a direct result of the operation of the short-term vacation rental unit and no appeal rights of those violations remain. Such violations shall be evidenced by a finding of guilt or fault by court or an administrative officer or body designated by the City Council.

A short-term vacation rental certificate which is revoked shall prevent its certificate holder from applying for a new certificate or short-term vacation rental on the same property or part thereof for a period of one (1) year from the date of revocation. Prior to any revocation, the owner or the short-term vacation rental agent shall be cited to the Administrative Hearing Officer, or a body designated by the City Council, for a hearing to establish proof of violations.

**Sec. 38-438. Short-term vacation rental annual renewal and fee.**

(a) A short-term vacation rental certificate must be renewed annually by any applicant to legally operate as a short-term vacation rental within the City of Chattanooga.

(b) A certificate may only be renewed if:

    (i) A renewal application is submitted to the Development Review and Permitting Division not less than thirty (30) days prior to the certificate's expiration date;

    (ii) All information provided in and relating to the original short-term vacation rental application has not changed within the previous certification period; and

    (iii) The property requesting to be renewed as a Short-term vacation rental has not had more than two (2) documented violations of City Code or Tennessee law as a direct result of the operation of the short term vacation rental within the previous certification period.

(c) If a property requesting to be renewed as a Short-term vacation rental has had three (3) or more documented violations of City Code or Tennessee law as a direct result of the operation of the short-term vacation rental during the previous certificate period, the Development Review and Permitting Division shall deny the renewal certificate. Certificates denied on this basis may be appealed to the Administrative Hearing Officer as set forth in Section 21-232.

(d) The Development Review and Permitting Division reserves the right to deny a renewal Certificate, within its discretion, even if the property requesting to be renewed as a Short-term vacation rental has had only one (1) or two (2) documented violations of City Code or Tennessee law. Certificates denied on this basis may be appealed to the Administrative Hearing Officer as set forth in Section 21-232.

(e) There shall be a short-term vacation rental certificate renewal fee to be paid annually to the Development Review & Permitting Division upon renewal pursuant to Section 38-436(b) in addition to any applicable transaction related fees and any taxes required by the State of

13981

Case 1:23-cv-00221-CLC-CHS   Document 1-2   Filed 09/27/23   Page 39 of 41   PageID #: 45

Tennessee related to the operation of a short-term vacation rental. This fee shall be remitted to the City Treasurer within thirty (30) days after occupancy occurs within the rental units.

(f)     A certification more than thirty (30) days beyond its expiration date shall not be renewed.

**Sec. 38-439. Short-term vacation rental agent.**

(a)     The owner of a short-term vacation rental shall designate a short-term vacation rental agent on its application for a certificate for a short-term vacation rental. A property owner or resident of a unit owned by a corporation may serve as the short-term vacation rental agent. Alternatively, the owner may designate a person as his or her agent who is over age eighteen (18) and meets all local and state regulatory requirements to fulfill the duties of a short-term vacation rental agent.

(b)     The duties of the short-term vacation rental agent are to:

(i)     Be available twenty-four (24) hours a day, seven (7) days a week to respond to telephone calls from law enforcement, first responders, and/or City designees;

(ii)    Appear on the premises of any short-term vacation rental unit within two (2) hours following notification from the City of issues related to the use or occupancy of the premises. This includes, but is not limited to, notification that occupants of the short-term vacation rental unit have created unreasonable noise or disturbances, engaged in disorderly conduct or committed violations of the City Code or other applicable law pertaining to noise, disorderly conduct, overcrowding, consumption of alcohol, or use of illegal drugs. Failure of the agent to timely appear to two (2) or more complaints regarding violations may be grounds for penalties as set forth in this Chapter. This is not intended to impose a duty to act as a peace officer or otherwise require the agent to place himself or herself in a perilous situation;

(iii)   Receive and accept service of any notice of violation or notice of hearing related to the short-term vacation rental; and

(iv)    Monitor the short-term vacation rental for compliance with laws.

(a)     An owner may change his or her designation of a short-term vacation rental agent temporarily or permanently; however there shall only be one (1) such agent for a property at any given time. To change the designated agent, the owner shall notify the Development Review and Permitting Division in writing of the new agent's identity, together with all information regarding such person as required by the applicable provisions of this Chapter.

**Sec. 38-440. Invalidity of part; private agreements and covenants.**

Should any court of competent jurisdiction declare any section, clause, or provision of this Article to be unconstitutional, such decision shall affect only such section, clause, or provision so

Case 1:23-cv-00221-CLC-CHS   Document 1-2   Filed 09/27/23   Page 40 of 41   PageID #: 46

declared unconstitutional, and shall not affect any other section, clause or provision of this Article. Additionally, this Chapter shall in no way be used to supersede any privately created agreements or covenants by any homeowner associations or developers restricting certain uses.

**Sec. 38-441. Annual Review.**

The Development Review and Permitting Division will conduct at a minimum an initial annual review of the provisions of this Article. The Board of Zoning Appeals and/or its departmental designee, shall conduct an annual review of the appeals before that body and suggest any text amendments that may be appropriate to the City Council.

**Secs. 38-442—38-450. Reserved.**

SECTION 2. BE IT FURTHER ORDAINED, That this Ordinance shall take effect two

(2) weeks from and after its passage.

Passed on second and final reading: May 16, 2023

_____
CHAIRPERSON

APPROVED:_____ DISAPPROVED:_____

_____

_____
MAYOR

PAN/mem/v7/Alternate Version

9

13981